**Romulus NEDEA, Plaintiff,**

v.

**George VOINOVICH, et al., Defendants.**

**No. 1:97–CV–521.**

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 18, 1998.

Romulus Nedea, Grafton, OH, pro se.

Robert C. Angell, Office of Attorney General, Corrections Litigation Section, Columbus, OH, for defendants.

Robert C. Angell, See above, for Margarette T. Ghee, defendant.

## MEMORANDUM OPINION

GWIN, District Judge.

On August 6, 1997, Defendants George Voinovich, Governor for the State of Ohio; Margarette Ghee, Chairperson of the Ohio Adult Parole Authority; the unnamed President and CEO of the Knowlton Construction Company [termed]; and Paul Voinovich [termed] (collectively "defendants") filed a motion for summary judgment. The defendants seek judgment as to Plaintiff Romulus Nedea's claims that defendants (1) conspired to keep plaintiff in prison, and (2) violated his constitutional rights by denying plaintiff parole [Doc. 22].[1] Plaintiff Nedea filed his brief opposing defendants' motion on February 2, 1998 [Doc. 46].[2] For the reasons that follow, the Court grants defendants' motion for summary judgment.

**1.** Although not noted in defendants' motion for summary judgment, defendants Paul Voinovich and the unnamed president of Knowlton Construction Company were dismissed from this action pursuant to 28 U.S.C. § 1915(e), by order of United States Magistrate Judge Patricia A. Hemann, dated February 26, 1997.

**2.** Plaintiff Nedea is presently incarcerated at Grafton Correctional Institution located in Grafton, Ohio.

**3.** Plaintiff Nedea states that shortly after his incarceration, he was admitted to a "Defendant associated hospital" wherein he underwent surgery to correct his medical condition. Plaintiff says that during the course of this surgery, unknown defendants caused him to receive a vasectomy without his knowledge, approval or prior

## I

Plaintiff Romulus Nedea's allegations arise from a series of incidents following his parole release in 1986. On or about January 1987, plaintiff was arrested on a charge of public indecency. According to his parole candidate evaluation, plaintiff was "[o]bserved by store security flaunting [his] penis" by way of a two-way mirror in a department store. Plaintiff was held until the charges were later dismissed. Plaintiff contends that his arrest was related to his suffering from a serious bladder and prostate-related condition. Because his arrest violated conditions of his 1986 parole release, plaintiff was detained until sometime in February 1987, despite dismissal of the charges. After a hearing, plaintiff's parole was revoked and he was reincarcerated.[3]

On February 28, 1997, Plaintiff Nedea filed a complaint in the United States District Court for the Northern District of Ohio. He sought declaratory relief only [Doc. 1]. In his complaint, plaintiff asserts two grounds for relief against defendants George Voinovich and Margarette Ghee. First, plaintiff contends that he is the target of a conspiracy by the defendants to keep him in prison for the benefit and profit of the defendants. Second, plaintiff argues that the State of Ohio's "parole statutes" (§§ 2967.03 and 5149.02) are unconstitutional because they violate doctrines prohibiting "the delegation of power" and "unbridled discretion," thus enabling defendants to make "unreviewable parole decisions based on race."

consent. At ¶ 20 of his complaint, Plaintiff Nedea asserts such acts:

> violated his rights to maintain bodily integrity, along with his right to procreate, by surgically sterilizing him, which violated Plaintiff Nedea's First, Fourth and Fourteenth Amendments to the United States Constitution; and was performed without any penological justification, with an obdurate disregard to the ends, with a malicious intent to cause such a direct result, which violated Plaintiff Nedea's right to be free from cruel and unusual punishment, within the meaning of the Eighth Amendment to the United States Constitution, in violation of federal law.

Plaintiff maintains that such medical misconduct was part of the alleged conspiracy among the named an unnamed defendants.

Plaintiff Nedea alleges that defendant Governor George Voinovich directed this conspiracy. Nedea specifically says that Gov. Voinovich, "with the direct and proximate assistance and tacit approval of ... Ghee," falsified criminal statistics to justify the building of new prisons in Ohio. Plaintiff Nedea claims Defendant Voinovich profits from this construction, allegedly by illegally steering work to his brother and other political associates, complaint ¶ 33. Plaintiff also alleges that defendant Margarette Ghee, as part of the alleged conspiracy, deliberately denied him parole and kept him incarcerated to prevent him from speaking out against defendants and revealing the conspiracy.[4]

Plaintiff also alleges that the defendants denied him parole on the basis of his race. In particular, Nedea says that the statutes and rules governing parole release in the State of Ohio violate the doctrine of "unbridled discretion," thus enabling the defendants to consider race when making parole

decisions. In sum, Plaintiff Nedea says defendants denied his release because he is Caucasian. Nedea argues this unlawful consideration of his race allows defendants "to maintain a racial balance within their personally created, extremely lucrative, snug prison world."[5]

A review of plaintiff's parole records shows that he was re-incarcerated in 1987 for violation of his 1986 parole release. The underlying grounds for plaintiff's prior arrests and incarceration, together with plaintiff's parole candidate evaluation were reviewed before a hearing panel of the State Parole Board on or about March 27, 1995. The full Board heard plaintiff's case on or about April 3, 1995.[6] Although several factors favorably supported Nedea's parole review,[7] the Board continued his incarceration until May of 2000 because (1) there was substantial reason to believe plaintiff would engage in future criminal conduct, or that he would not conform to future conditions of release;[8] and (2) there

---

**4.** Plaintiff Nedea maintains in his complaint at ¶ 40 that the Parole Board, in furtherance of the conspiracy, recently denied his release and continued his confinement "for no legally or constitutionally sound reasons."

**5.** Plaintiff claims that defendants have created two separate standards for release decisions, and cites statistics purporting to demonstrate that black inmates are paroled at higher rates than white inmates. As a result of this unlawful policy, plaintiff says defendants

[d]o not "appear" racially biased towards African Americans, so that Defendants can continue within their civil conspiracy, without bringing too much unwanted focus upon their illegal and unconstitutional activities, practices, and customs, designed to promote their respective and successive motives and interests, which do not serve the public's interests or any penologically sound justification.

Complaint at ¶¶ 50–51, 54. As a result, Nedea says the defendants have denied him due process of law, and that their actions are so irrational that they serve no legitimate penological justification. Complaint at ¶¶ 55, 62.

**6.** In their decision to revoke plaintiff's parole, the Parole Board took notice of Nedea's prior history which included, but was not limited to: (1) plaintiff's 1965 arrest and subsequent confinement for assault with intent to rape and indecent exposure; (2) plaintiff's July 23, 1969 sexual abuse of a nine-year old female child, for which he was confined to the Lima State Hospital on

August 20, 1970, and from where he escaped in 1971, injuring a state corrections officer; (3) plaintiffs June 1981 technical violation of his February 1991 furlough release; and (5) plaintiff's later 1986 parole release and subsequent indecent exposure arrest parole violation in 1987.

**7.** The Board also considered, to the plaintiff's favor, Nedea's attendance and participation in Alcoholics Anonymous, Narcotics Anonymous, and self-esteem/assertiveness workshops. Nedea also scored 56 out of 70 possible points receiving a rating of "good" on his job evaluation from the Ohio Penal Industries.

**8.** The Board noted a March 15, 1995 psychological report which stated that Plaintiff's "[p]rognosis poor to average" and that he is "still [a] threat to children." The board noted that plaintiff "[o]nly completed Phase I of Polaris," a program for sex offenders, and that he has an alcohol abuse problem.

A review of Nedea's risk assessment score sheet shows that he was assessed 2 points for his prior felony conviction, 4 points for having an arrest within five years prior to the arrest for his current offense, and 4 points for alcohol abuse problems. Plaintiff was assessed 4 points for prior parole supervisions, and 4 points for prior parole revocations. Thus, plaintiff received a total score of 18 which translates into a "risk score" of 2.

An "offense score" of 1 was also added because of Nedea's conviction for an "endangering

was substantial reason to believe that plaintiffs release would create unnecessary risk to public safety, or would not further the interest of justice or and support the welfare of society.[9]

## II

Defendants say they are entitled to summary judgment for the following reasons: (1) plaintiff has no constitutional or statutory right to parole release; (2) there is no evidence that Nedea would have been granted a parole release "but for" his race; (3) plaintiff fails to allege sufficient facts to support his allegation of a conspiracy by defendants to deprive him of his rights; (4) plaintiff fails to state a claim for cruel and unusual punishment under the Eighth Amendment of the United States Constitution; (5) plaintiff fails to allege any facts that show the defendants participated in or encouraged others to engage in a conspiracy to deprive Nedea of his rights under law.

## III

Federal Rule of Civil Procedure 56(c) states the procedure for granting summary judgment and says, in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (1987); *SEC v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp.*, 822 F.2d at 1435. Not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[10]

The dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. Id. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *60 Ivy Street*, 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569

offense." Plaintiff's aggregate score of 3 placed Nedea in "guideline 3" on the risk assessment matrix. Guideline 3 recommends a continuance in sentence between 13 to 18 months for Felony 1 convictions.

**9.** *See* Ohio Administrative Code § 5120:1–1–07(A)(1) and (2), which provide:

PROCEDURE FOR RELEASE ON PAROLE, FURLOUGH, AND SHOCK PAROLE; FACTORS THAT SHALL BE CONSIDERED AND FACTORS THAT MAY BE CONSIDERED IN A RELEASE HEARING

(A) An inmate may be released on or about the date of his eligibility for release, unless the parole board, acting pursuant to rule 5120:1–1–10 of the Administrative Code, determines that he should not be released on such date for one or more of the following reasons:
(1) There is substantial reason to believe that the inmate will engage in further criminal con-

duct, or that the inmate will not conform to such conditions of release as may be established under rule 5120:1–1–12 of the Administrative Code;
(2) There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society;

**10.** In *Anderson*, the Supreme Court described the requirement of "materiality" as follows:

This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identifi-

(1968)). See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact.[11]

Upon review of the governing law and the record as a whole, the Court finds there exist no genuine issues of material fact such that a reasonable jury considering this action could return a verdict for Plaintiff Nedea.

## IV

Defendants first say they are entitled to summary judgment because Plaintiff Nedea has no constitutional or statutory right to parole release. In response, Nedea concedes that the law in the Sixth Circuit does not recognize a constitutionally protected liberty interest in parole release. *Inmates of Orient Correctional Inst. v. Ohio State Adult Parole Authority*, 929 F.2d 233 (6th Cir.1991). However, plaintiff says that "the absence of a right to parole is irrelevant to the facts of this case" because "[t]he basis of [Nedea's] claim is that the statutes are unconstitutional in their construction, rather than their interpretation." In this regard, Nedea argues, irrespective of whether a prisoner has a "right to parole release," parole boards and state officials do not have authority to deny

parole because of or "but for" impermissible reasons such as a prisoner's race.

It is clear that inmates do not have a constitutional right or liberty interest in parole release. See *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (finding that an inmate has no constitutional or inherent right to parole or release from a valid sentence).[12] The Sixth Circuit follows *Greenholtz*. In *Mayes v. Trammell*, 751 F.2d 175, 177 (6th Cir.1984), the Court found that the "mere provision by a state for the possibility of parole does not, by itself, create a liberty entitlement protected by the due process clause." *Id.* at 177.

This view is similarly recognized in Ohio. In 1989, the Ohio Supreme Court held that Ohio's parole statute, Ohio Rev.Code § 2967.03, does not create a liberty entitlement. *State ex rel. Ferguson v. Ohio Adult Parole Auth.*, 45 Ohio St.3d 355, 356, 544 N.E.2d 674 (1989); *State ex rel. Blake v. Shoemaker*, 4 Ohio St.3d 42, 446 N.E.2d 169 (1983).[13] Since there is no constitutional or inherent right to be conditionally released before the expiration of a valid sentence, any prisoner who is denied parole is not thereby deprived of "liberty," for purposes of due process clause claim, if state law makes parole decision discretionary. *State ex rel. Hattie v. Goldhardt*, 69 Ohio St.3d 123, 630 N.E.2d 696 (1994). Ohio's parole statute affords the Adult Parole Authority discretionary authority in its parole decisions, and further allows the Authority to create "internal guidelines." However, as plaintiff sug-

---

cation of which facts are critical and which facts are irrelevant that governs. *Id.* at 248.

11. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street*, 822 F.2d at 1436 (quoting *Anderson*, 477 U.S. at 249).

12. In *Greenholtz*, the Supreme Court stated:
There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: "[G]iven a valid conviction, the

criminal defendant has been constitutionally deprived of his liberty."
*Id.* at 7 (quoting *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)).

13. See *Dillon v. Russell*, 85 Ohio App.3d 781, 621 N.E.2d 491 (3rd Dist.1993) (stating that a prisoner does not possess full range of freedom possessed by unincarcerated individuals so that institutional restrictions on First Amendment rights may be permissible in light of central objective of administration of safeguarding institutional security); *King v. Dallman*, 85 Ohio App.3d 43, 619 N.E.2d 66 (12th Dist.1993) (finding that statute allowing state Adult Parole Authority (APA) to grant parole creates no presumption that parole will be granted and does not create expectancy or liberty interest upon which prisoner can base due process claim).

gests, the statute does not permit consideration of impermissible factors when making parole decisions.

■ Generally, revocation of parole implicates liberty interests that cannot be denied without certain procedural protections, including the right to hearing within reasonable time following arrest and, under certain circumstances, right to counsel. *State ex rel. Jackson v. McFaul,* 73 Ohio St.3d 185, 652 N.E.2d 746 (1995), *reconsid. denied,* 74 Ohio St.3d 1410, 655 N.E.2d 188 (1995). However, a prisoner may be deprived of a "liberty" where the prisoner is denied release and thereafter, the prisoner shows that there were procedural defects in the parole review process.

In this context, plaintiff's allegation regarding the use of impermissible standards, such as race, by authorities involved in parole reviews and decisions, could have merit. See *State ex rel. Hattie v. Goldhardt,* 69 Ohio St.3d 123, 630 N.E.2d 696 Ohio 1994) (prisoner was deprived of no protected liberty interest when he was denied parole allegedly based on inaccurate information in risk assessment/aggregate score sheet and could claim no due process rights with respect to parole determination). More specifically, if Plaintiff Nedea is able to demonstrate that the Ohio Parole Authority breached procedure, which would include impermissible consideration of race, then plaintiff may have a valid claim against defendants.

■ Here, Nedea fails to show any evidence that the Parole Authority considered his race or other impermissible "internal guidelines." To the contrary, defendants put on strong evidence that plaintiff's parole review included traditional considerations such as plaintiff's prior history, potential for long-term rehabilitation, and likelihood to repeat or continue to breach conditions of release. Defendants also provide evidence that plaintiff's case was considered by a hearing panel and by the full board. Defendants further show that Nedea received written notice outlining the grounds for which his release was denied.[14] Furthermore, plaintiff has failed to

show evidence that raises a material question of fact regarding the accuracy or procedure used in scoring plaintiff's eligibility for release. Absent such a showing, plaintiff's due process claim must fail.

### V

Defendants next say that they are entitled to summary judgment because there is no evidence that Nedea would have been granted a parole release "but for" his race. In response, Nedea argues that statistical evidence shows that defendants have maintained a "consistent racial balance over a period of years" suggesting a higher rate of parole for African–American prisoners compared with Caucasian prisoners. Plaintiff contends that this racial balance is wrongfully being maintained through the Ohio Adult Parole Authority at the direction of the defendants.

■ Defendants properly state that the Equal Protection Clause prohibits a state from discriminating against prisoners because of race absent some showing of compelling state interest. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The defendants are also correct in saying that "parole release is an equity-type judgment" in which the parole board is granted extensive discretion in its decisions. See *Greenholtz,* 442 U.S. at 8. It is the constitutionality of the breadth of that discretion that plaintiff challenges. However, the Court need not reach the constitutional aspects of the plaintiff's claims unless the claims, themselves, have merit. In viewing the facts and inferences to be drawn therefrom in the light most favorable to Plaintiff Nedea, the Court concludes that plaintiff fails to assert a meritorious claim.

■ To succeed on a claim challenging a parole release decision and the broad discretion afforded the Parole Authority for purposes of establishing a violation of equal protection, a complaining party must show "exceptionally clear proof" that the board abused its discretion. *McCleskey v. Kemp,*

14. *See, e.g., State, ex rel. Hunt v. Shoemaker,* 17 Ohio St.3d 65, 477 N.E.2d 626 (1985) (finding that a written statement of grounds on which parole denied after hearing is sufficient in the face of an allegation that the notice "sheds no light" on reason for denial).

481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Specifically, the prisoner must show "purposeful discrimination" and then establish that the discrimination had a discriminatory effect on him. *Id.* at 292.[15] Accordingly, an equal protection plaintiff cannot prevail if the defendants have legitimate, nondiscriminatory reasons for their actions. *Hunter v. Underwood,* 471 U.S. 222, 227–28, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985) (citing *Village of Arlington Heights,* 429 U.S. at 265, stating that "[p]roof of racially discriminatory intent or purpose is required to show a violating of the Equal Protection Clause.").

■ Here, Plaintiff Nedea argues that "although statistics are not dispositive of the question of discrimination ... gross disparities may establish a prima facie case of discrimination and shifts the burden to the defendants to prove their parole decision was based on a 'nondiscriminatory motive.'" *Santiago v. Miles,* 774 F.Supp. 775, 799 (W.D.N.Y.1991).[16] After reviewing the record as a whole, defendants have successfully proved that there existed legitimate, nondiscriminatory, non-racial motivations for their decision to continue Nedea's incarceration. These include that unequivocal facts that (1) plaintiff is a repeat sex offender who committed a crime endangering a minor child; (2) plaintiff consciously violated supervised release conditions on two prior occasions; (3) plaintiff aggressively escaped from prior confinement, injuring a guard; (4) plaintiff failed to complete sex offender counseling; and (5) there is evidence that plaintiffs prognosis for improvement was stated as "poor to average," and Nedea was found to pose a continuing threat to children.

■ Although Plaintiff Nedea provides evidence that, statistically, there may be some indications of racial disparity in parole release percentages between African–American and Caucasian prisoners, Nedea fails to give any proof that defendants either purposefully engaged in or encouraged discrimination against him during his parole review. Plaintiff also fails to show how, if at all, the defendants specifically used such racial statistics in making parole decisions. Plaintiff further fails to show any evidence suggesting that the use of racial statistics has become of "a policy" of the Parole Authority. In this respect, plaintiff's allegations are conclusory and unsupported by cognizable evidence.

Defendants liken this case to *Pariseau v. Ghee,* Case No. C2–95–851 (S.D.Ohio July 18, 1996) (unreported), wherein the U.S. District Court for the Southern District of Ohio considered a similar challenge by a white inmate to a parole release decision. In *Pariseau,* the inmate was denied parole because the prisoner violated conditions of prior parole releases and was found by the board to remain a danger to others. In that case, the plaintiff used racial statistics in an attempt to show discrimination against white prisoners, claiming that a disproportionate number of African–American inmates are released on parole. In rejecting the plaintiff's argument, the District Court stated:

> Plaintiff has presented absolutely no evidence tending to indicate that defendants act or have acted with a discriminatory animus with respect to parole release considerations. Instead, plaintiff relies upon his own affidavit testimony that a disproportionate share of African–American prisoners are released on parole. Even accepting plaintiffs argument as true, disproportionate impact in and of itself is not sufficient to state a constitutional claim. *Id.* at 4–5.

Because Plaintiff Nedea is unable to give any evidence or facts showing that the defendants herein purposefully discriminating against him or, in any way have engaged in a policy of considering race or other prohibited factors when making parole release decisions, plaintiff's claim fails as a matter of law.

---

15. In cases where allegedly discriminatory decisions are justified by legitimate, non-discriminatory grounds, courts have applied a "but for" analysis; that is, the plaintiff must show that official action would have been different "but for" his race. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988).

16. Nedea also cites *Thomas v. Pate,* 493 F.2d 151 (7th Cir.), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119, *vacated on other grounds,* 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed.2d 39 (1974).

## VI

■ Defendants say Plaintiff Nedea fails to allege facts sufficient to support his allegation of a conspiracy by defendants to deprive Nedea of his constitutional rights. In response, Nedea contends that the decrease in the parole rate in Ohio, from 42 percent in 1990 to 13 percent in 1997, the date defendant Voinovich was elected Governor, is evidence that there "exists a civil conspiracy to incarcerate for financial interest, job longevity, and political interests, at the expense of plaintiff's rights."

In the Sixth Circuit, a party alleging civil conspiracy must show the existence of a single plan between two or more persons who share a common objective that is furthered by the commission of an overt act that caused injury to the complaining party. *Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir.1985).[17] Courts have also said that civil conspiracy claims must be pleaded with some specificity, and that allegations unsupported by material facts are insufficient to make a claim under 42 U.S.C. § 1983. See, e.g., *Collyer v. Darling, supra,* n. 17; *Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir.1987); *Jaco v. Bloechle,* 739 F.2d 239, 245 (6th Cir. 1984).

In the instant case, Plaintiff Nedea asserts only conclusory allegations which lack factual support. He gives no evidence connecting defendants to any common act designed to objectively discriminate against him. Nedea further fails to show that defendant Gov. Voinovich and Margarette Ghee ever communicated with one another regarding plaintiff, let alone together coordinated a scheme to wrongfully continue Nedea's incarceration.[18]

Because plaintiff fails to give any evidence showing that defendants herein either shared a common objective to purposefully discriminate against him, or engaged in an overt act furthering such an objective, plaintiff's allegation of a conspiracy fails.

## VII

The defendants next say that plaintiff's claim under the Eighth Amendment must fail for the reason that Nedea's continued incarceration, even to his maximum term, is not an infliction of cruel and unusual punishment. In response, Plaintiff Nedea argues that although "mere incarceration" or a continuation thereof, may not 1 constitute cruel and unusual punishment as prohibited by the Eighth Amendment, his being denied parole "without any real penological justification" is unconstitutional.

■ Here, the defendants urge that Plaintiff Nedea's allegations that the defendants acted maliciously toward him are unsupported by evidence and are "belied by the wholly sufficient grounds that existed to deny Plaintiff's release." The Court agrees and finds that plaintiff's claim under the Eighth Amendment is frivolous.[19] The simple fact of denial of parole and continued incarceration is insufficient to state a claim for cruel and unusual punishment, even if the inmate suf-

---

**17.** See also *Collyer v. Darling,* 98 F.3d 211, 229 (6th Cir.1996), outlining the elements of conspiracy as follows:

> The standard for proving a civil conspiracy is as follows: 'A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan. that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.'

*Id.* (quoting *Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir.1985).

**18.** The defendants in 1987, The defendants argue that it is impossible for defendant Gov. Voinovich and Ghee to have engaged in a conspiracy to illegally imprison Nedea because (1) they did not assume their respective positions until 1991 and 1993; (2) both plaintiffs record and his psychological evaluation demonstrate that there were ample non-discriminatory reasons to deny parole release to him; (3) even if plaintiff could show a statistical disparity as to parole releases between white and black inmates, he still would have offered no proof that defendants discriminated against him; and (4) plaintiff states no specific facts in support of his conspiracy allegations

**19.** Pursuant to 28 U.S.C. § 1519(e)(2), a district court may dismiss a plaintiff's complaint if:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
>    *     *     *     *     *     *
>
> (B) the action or appeal—
>   (i) is frivolous or malicious;

fers emotional distress from the denial of parole. *LoCicero v. Day*, 518 F.2d 783 (6th Cir.1975); *Shaffner v. Sowders*, 636 F.2d 1219 (6th Cir.1980).[20]

Because Plaintiff Nedea fails to proffer any evidence that the defendants herein used him as a "political pawn" to "increase the prison population for the purpose of obtaining federal grants," and to maintain a racial balance to the financial benefit of defendants, his claim under the Eighth Amendment is dismissed.

## VIII

The defendants last say that they are entitled to summary judgment because Plaintiff Nedea fails to allege any facts showing the defendant directly participated or encourage others, as their agents, to participate in the conspiracy against plaintiff. In response, Nedea argues that because Margarette Ghee is a member of the Parole Board, it then follows that any and all policies or parole decisions made by the Board, or any subgroup thereof, can be assumed to be at her direction.

Upon review of the record as a whole, the Court is unable to find any evidence to support plaintiff's argument of a conspiracy or a scheme either directed, controlled or suggested by defendants Gov. George Voinovich or Margarette Ghee, outside of Plaintiff Nedea's mere allegations. It is well established that liability under 42 U.S .C. § 1983 may be based only on allegations that the named defendant(s) "either encouraged the specific incident or misconduct or in some other way directly participated in it," and not, for example, on a theory of *respondeat superior. Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984).[21] Here, defendants argue that plaintiff's bare allega-

tion that defendants were engaged in a conspiracy to deprive him of his rights is insufficient, as a matter of law, to state a claim. The Court again agrees.

Plaintiff Nedea fails to show the existence of a common objective by these defendants to either purposefully discriminate against him for the purpose of continuing his incarceration, or to suggest or engage in an overt act to carry such an objective to its end. Absent such evidence, the Court concludes that plaintiff has failed to show that defendants in any way, participated in, encouraged or directed others to engage in a conspiracy against Plaintiff Nedea. Therefore, defendants are entitled to judgment as a matter of law.

For these reasons stated herein, the defendants' motion for summary judgment against Plaintiff Nedea in the above-captioned cause in granted.

---

(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.

**20.** *See also Shockey v. Fouty,* 106 Ohio App.3d 420, 666 N.E.2d 304 (4th Dist.1995) (inmate's allegation that prison officials deprived him of liberty interest without due process when they imposed five hours of "extra duty" on him following disciplinary hearing was insufficient to state civil rights claim absent allegation that state

remedies for redressing wrong were inadequate); *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (requiring a prisoner to serve even his maximum sentence works no constitutional violation upon an inmate).

**21.** *See Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir.1982), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *Wilson v. Beebe,* 612 F.2d 275, 276 (6th Cir.1980). *See also Monell v. Dept. of Social Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).