OPINION
{¶ 1} Plaintiff-appellant, Stanley Hill, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion to dismiss of defendants-appellees, Gary Croft, O. Karl, and M. Vanderzerwan, individually, and in their capacities as board members and hearing officers of the Ohio Adult Parole Board. Because the trial court properly concluded plaintiff's complaint fails to state a claim upon which relief can be granted, we affirm.
 {¶ 2} On June 15, 2004, plaintiff filed a "Complaint for Declaratory Judgement [sic], Injunctive Relief" in the Franklin County Court of Common Pleas seeking to have the trial court declare "unconstitutional certain practices and procedures of Defendant's [sic] Gary Croft, O. Karl and M. Vanderzwan [sic], who were employed by the Ohio Adult Parole Authority during Plaintiff's Layne Review Hearing, for determination of Parole consideration." (Complaint, at ¶ 1.) In addition, plaintiff sought preliminary or permanent injunctive relief.
 {¶ 3} According to plaintiff's complaint, he understands he has no statutory or constitutional right to parole. He, however, challenges the "procedures used to determine parole eligibility on the grounds that they are carried out in violation of the Equal Protection of Law and the Procedural Due Process Clauses under Article I, 16 and Article II, §§ 10 of the Ohio Constitution, and of the Fourteenth Amendment of the United States Constitution." (Complaint, at ¶ 2.) Plaintiff's complaint further asserts "that Defendant's [sic] herein action also violates the Non-Delegation of Authority Doctrine, because Defendant's actions are unappealable for Judicial Review, which is impermissible under the Unbridled Discretion Doctrine." Id.
 {¶ 4} In support of his equal protection contentions, plaintiff's complaint alleges that defendants systematically treated persons of similar situations dissimilarly. Plaintiff's allegations then detail the course of his case before the parole board. Specifically, plaintiff's complaint asserts he had a jury trial and was found not guilty of aggravated murder, but guilty of murder. When plaintiff was before the parole board for his first parole hearing on December 14, 1998, he was assigned a Category 13, corresponding to a conviction for aggravated murder. He was continued to December 2008 for rehearing. Plaintiff alleges that "actions of Defendant Melvin Morton, an employee of the Adult Parole Authority, who presided at plaintiff's statutory first-hearing, were motivated by situations that he was a personal friend of former co-worker Dorathy [sic] Porter, the divorced/spouse of the decedent in plaintiff's case." Plaintiff also attached to his complaint documents reflecting favorable decisions rendered on other inmate parole requests where, according to plaintiff's allegations, the inmates were situated similarly to him. (Complaint, at ¶ 39.)
 {¶ 5} According to his complaint, plaintiff was again before the parole board on April 15, 1999, and the board voted to rehear plaintiff's parole request. On May 19, 1999, plaintiff had a rehearing, was assigned a Category 11, and was continued until "the 9th month of 2008, with optional outstanding programsachievements to be considered at next hearing." (Complaint, at ¶ 22.) (Emphasis sic.)
 {¶ 6} Plaintiff alleges he then heard through unit management staff at the correctional institution that he would receive aLayne review hearing in October 2003. Plaintiff's complaint states that defendants informed him his May 19, 1999 hearing had been rescinded, and plaintiff would be considered for parole pursuant to a Layne review.
 {¶ 7} Plaintiff alleges that, at the Layne hearing, he was assigned his correct category offense. He asserts defendants gave him "the distinct impression that he would receive credit for his outstanding programs achievements, as Defendant's [sic] studiously went over with plaintiff every detail of those programs and then began writing them down individually on a separate parole sheet." (Complaint, at ¶ 26.) Plaintiff further alleges defendants "verified plaintiff's residence for parole, [and] at the same time told plaintiff that he would hear something in January of 2004, from the Central Office Review Board." (Complaint, at ¶ 27.) According to plaintiff's complaint, on March 16, 2004, he received a decision continuing him until September 2008.
 {¶ 8} In response to plaintiff's complaint, defendants filed a motion to dismiss pursuant to Civ.R. 12(B)(6), contending plaintiff's complaint failed to state a claim upon which relief could be granted. Following the parties' full briefing of the motion, the trial court journalized a decision and entry granting defendants' motion to dismiss.
 {¶ 9} Plaintiff appeals, assigning the following errors:
Assignment of Error I
The Trial Court Errered [sic] by Granting Defendant's Motion to Dismiss Pursuant To Civil Rule 12(B)(6).
Assignment of Error II
The Trial Court Errered [sic] By Denying The Plaintiff's Equal Protection Claim Of Certain Classified Inmates "Similarly Situated" To The Plaintiff's Assigned Offense category of Conviction, Section 202(B) Murder, Category 11.
Assignment of Error III
The Trial Court Erred by Relying Exclusively Upon Defendants['] Belied Averments That Plaintiff['s] Procedural Due Process Claims Were Predicated Under 42 U.S.C. § 1983.
Assignment of Error IV
The Trial Court Erred By Dismissing Plaintiff's Challenged Claims Of The Limitations Of Government Power To Delegate Its Authority To A Quasi-Administrative Agency (OAPA), Without Setting A Guideline So That Administrative Delegated Powers Are Reviewable.
 {¶ 10} Plaintiff's assignments of error, reduced to their essence, assert the trial court wrongly dismissed the three aspects of plaintiff's complaint: (1) his equal protection claim, (2) his due process claim, and (3) his contentions concerning delegation of authority.
 {¶ 11} In order for a trial court properly to dismiss a complaint pursuant to Civ.R. 12(B)(6), "it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shockey v.Wilkinson (1994), 96 Ohio App.3d 91, 93, citing York v. OhioState Hwy. Patrol (1991), 60 Ohio St.3d 143, 144. Furthermore, in construing the complaint, the trial court "must presume the truth of all the factual allegations of the complaint and make all reasonable inferences in favor of the nonmoving party."Shockey, at 94. The dismissal of a complaint pursuant to Civ.R. 12(B)(6) presents a question of law which we review de novo. Id.
 {¶ 12} A declaratory judgment is a proper remedy to determine the constitutionality or constitutional application of parole guidelines. Hattie v. Anderson (1994), 68 Ohio St.3d 232, 235, citing State ex rel. Adkins v. Capots (1989),46 Ohio St.3d 187; Linger v. Ohio Adult Parole Auth. (Oct. 14, 1997), Franklin App. No. 97APE04-482. "There are only two reasons for dismissing a complaint for declaratory judgment before the court addresses the merits of the case: (1) there is neither a justiciable issue nor an actual controversy between the parties requiring speedy relief to preserve rights which may otherwise be lost or impaired; or (2) in accordance with R.C. 2721.07, the declaratory judgment will not terminate the uncertainty or controversy." Halley v. Ohio Co. (1995), 107 Ohio App.3d 518,524; Berger Brewing Co. v. Liquor Control Comm. (1973),34 Ohio St.2d 93. See Therapy Partners of Am., Inc. v. Health Providers,Inc. (1998), 129 Ohio App.3d 572, 578. A justiciable issue requires the existence of a legal interest or right. Here, although plaintiff acknowledges he does not have a constitutional right to parole, he contends defendants violated his rights to equal protection of law and due process of law.
 {¶ 13} "To succeed on a claim challenging a parole release decision and the broad discretion afforded the Parole Authority for purposes of establishing a violation of equal protection, a complaining party must show `exceptionally clear proof' that the board abused its discretion. * * * Specifically, the prisoner must show `purposeful discrimination' and then establish that the discrimination had a discriminatory effect on him." Mayrides v.Ohio State Parole Auth. (Apr. 30, 1998), Franklin App. No. 97APE08-1035, quoting Nedea v. Voinovich (N.D.Ohio 1998),994 F.Supp. 910, 916-917.
 {¶ 14} Plaintiff's complaint fails to allege purposeful discrimination. Indeed, plaintiff comes closest to alleging purposeful discrimination in connection with his first parole hearing and the allegations related to Melvin Morton. Even then, plaintiff falls short of asserting purposeful discrimination, alleging instead that a conflict "motivated" Morton in the first parole hearing. More significant to plaintiff's appeal, subsequent parole hearings negated the effect of plaintiff's first hearing and independently determined plaintiff's current rehearing date. Thus, even taken as true, plaintiff's complaint fails to state a purposeful discrimination equal protection claim upon which relief can be granted and, consequently, does not present a justicible controversy.
 {¶ 15} Related to plaintiff's claim of purposeful discrimination is plaintiff's claim that he was treated differently than similarly situated inmates. Generally, a valid claim under Ohio's Equal Protection Clause alleges treatment different than that afforded similarly situated individuals.State ex rel. Patterson v. Indus. Comm. (1996),77 Ohio St.3d 201, 204. Given the myriad of factors the parole board considers in reaching its determination, plaintiff cannot maintain an equal protection claim concerning a parole decision when the argument is premised on an allegation that inmates are similarly situated by the crime committed or the sentence imposed, as plaintiff does through the documents attached to his complaint. See, e.g.,Loper v. Ohio Adult Parole Auth. (June 28, 2001), Franklin App. No. 00AP-436; State v. LaMar (Aug. 13, 1998), Lawrence App. No. 95CA31 (concluding that more than a similar or same offense is required to show inmates are similarly situated).
 {¶ 16} In the end, plaintiff seems to assert he was not treated fairly. "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Huebschen v.Dept. of Health Social Services (C.A.7, 1983), 716 F.2d 1167,1171, citing Personnel Administrator v. Feeney (1979),442 U.S. 256, 279, 99 S.Ct. 2282 (noting the person making the decision must have "selected or reaffirmed a particular course of action at least in part `because of,' not merely `in spite of,' its adverse effects upon an identifiable group"). Moreover, to the extent plaintiff attempts to distinguish the cited authority by premising his equal protection argument on the Equal Protection Clause of the Ohio Constitution, not the Fourteenth Amendment to the United States Constitution, "[t]he limitations placed upon governmental action by the Equal Protection Clauses of the Ohio and United States constitutions are essentially identical."Kinney v. Kaiser-Aluminum Chemical Corp. (1975),41 Ohio St.2d 120, 123.
 {¶ 17} Similarly, plaintiff's complaint fails to allege a claim for violation of his due process rights. "There is no constitutional or inherent right to be released before the expiration of a valid sentence." State ex rel. Miller v.Leonard (2000), 88 Ohio St.3d 46, 47, certiorari denied,530 U.S. 1223, 120 S.Ct. 2236, citing Greenholtz v. Inmates ofNebraska Penal and Corr. Complex (1979), 442 U.S. 1, 7,99 S.Ct. 2100; see State ex rel. Hattie v. Goldhardt (1994),69 Ohio St.3d 123, 125; Robertson v. Ohio Adult Parole Auth., Franklin App. No. 01AP-1111, 2002-Ohio-4303, at ¶ 33. An inmate that is denied parole is deprived of no protected liberty interest and can claim no due process rights with respect to a parole determination. Goldhardt, at 125-126. See, also, Miller, at 47 (observing that nothing in Am.Sub.S.B. No. 2 conferred a mandatory right to parole); Festi v. Ohio Adult Parole Auth.,
Franklin App. No. 04AP-1372, 2005-Ohio-3622, at ¶ 16 (noting that "even when OAPA has informed an inmate of its decision to grant parole, the inmate has no protected liberty interest in parole before his actual release").
 {¶ 18} Because plaintiff does not have a due process right in the context of parole release, plaintiff's complaint fails to state a claim upon which relief can be granted. As a result, no justiciable controversy exists.
 {¶ 19} To the extent plaintiff on appeal asserts he was wrongly assigned a conviction category under the parole guidelines for purposes of parole consideration, his complaint again fails to state a claim. Plaintiff is correct that, even though the Adult Parole Authority has "wide-ranging discretion" in parole matters, its "discretion must yield when it runs afoul of statutorily based parole eligibility standards and judicially sanctioned plea agreements." Layne v. Ohio Adult Parole Auth.,97 Ohio St.3d 456, 2002-Ohio-6719, at ¶ 28. Layne thus held "that in any parole determination involving indeterminate sentencing, the [Adult Parole Authority] must assign an inmate the offense category score that corresponds to the offense or offenses of conviction." Id. at ¶ 28. Plaintiff's complaint, however, alleges that he was reassigned to the appropriate category under Layne. His complaint thus states no claim for violation of the principles enunciated in Layne and fails to present a justiciable controversy.
 {¶ 20} Lastly, plaintiff contends that because the parole board's actions are not appealable in the courts, the "non-delegation of authority doctrine" is violated. In support, plaintiff cites Section 16, Article I, Ohio Constitution, and Section 10, Article II, Ohio Constitution. Neither supports his contentions. Section 16, Article I, Ohio Constitution provides that a person may redress injury in court; Section 10, ArticleII, Ohio Constitution provides that members of either house have the right to protest actions and to have their protest journalized.
 {¶ 21} Here, the constitutional provisions on which he premised portions of his complaint provide no basis for relief. While the constitution provides that plaintiff may bring suit for injury, it does not guarantee that plaintiff's action will be successful. Thus, Section 16, Article I, Ohio Constitution is not violated in the trial court judgment dismissing plaintiff's complaint. By its terms, Section 10, Article II, Ohio Constitution does not apply to plaintiff's allegations but, instead, applies to functions of the General Assembly. Because the two constitutional provisions plaintiff cites in support of his non-delegation of authority doctrine do not support his contention, plaintiff's contentions regarding the non-delegation of authority doctrine fail to state a claim or to present a justiciable controversy.
 {¶ 22} Given the foregoing, we overrule plaintiff's four assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
French and Travis, JJ., concur.