[Cite as *State ex rel. Thomas v. Ohio Adult Parole Auth.*, 2018-Ohio-3685.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Quarnail A. Thomas, | : | |
| Relator, | : | |
| v. | : | No. 17AP-720 |
| The Ohio Adult Parole Authority et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on September 13, 2018

*Quarnail A. Thomas*, pro se.

*Michael DeWine*, Attorney General, and *George Horvath,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1} Quarnail A. Thomas has filed this action in mandamus seeking a writ to compel the Ohio Adult Parole Authority ("OAPA") to vacate its decision denying him parole and to compel the OAPA to grant him parole.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The magistrate collected evidence and received the briefs filed by the parties. The magistrate then issued a magistrate's decision, appended hereto, which includes detailed findings of fact and conclusions of law. The magistrate's decision includes a recommendation that we deny the request for a writ.

**{¶ 3}** Thomas has filed objections to the magistrate's decision. Counsel for the OAPA has filed a memorandum in response. The case is now before the court for a full independent review.

**{¶ 4}** Thomas has failed to demonstrate that he has a clear legal right to have the parole decision overturned. He has not provided clear and convincing evidence that he was denied parole based on some sort of impermissible discrimination. His argument seems to be that people less deserving of parole have received parole while he has been denied parole.

**{¶ 5}** We, as a court of appeals, are not in a position to evaluate the comparative granting and denying of parole. We especially will not do such an evaluation based on one or more newspaper articles.

**{¶ 6}** Our magistrate properly addressed the pertinent issues. The objections to the magistrate's decision are overruled. We adopt the findings of fact and conclusions of law in the magistrate's decision. The request for a writ of mandamus is denied.

*Objections overruled; writ of mandamus denied.*

KLATT and SADLER, JJ., concur.

———————————

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Quarnail A. Thomas, | : | |
| Relator, | : | |
| v. | : | No. 17AP-720 |
| The Ohio Adult Parole Authority, et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on April 27, 2018

*Quarnail A. Thomas*, pro se.

*Michael DeWine*, Attorney General, and *George Horvath,* for respondent.

### IN MANDAMUS

{¶ 7} In this original action, relator, Quarnail A. Thomas, an inmate of the Chillicothe Correctional Institution ("CCI"), requests a writ of mandamus ordering respondent the Ohio Adult Parole Authority ("OAPA"), to vacate its March 16, 2016 decision denying him parole, and to enter a decision granting him parole.

Findings of Fact:

{¶ 8} 1. On October 10, 2017, relator, a CCI inmate, filed a complaint (petition) for a writ of mandamus against respondent.

{¶ 9} 2. Appended to the complaint is a completed OAPA form captioned "Ohio Parole Board Decision and Minutes" that relates to a March 16, 2016 parole board hearing on the matter of parole for inmate Quarnail A. Thomas.

{¶ 10} 3. The OAPA form is divided into seven sections. The first section requests a listing of offenses of conviction. For relator, the offenses of conviction are "2903.01 Aggravated murder 1 counts; 2907.02 Rape 2 counts."

{¶ 11} 4. Section 3(A) asks the parole board to indicate by marking a box whether "[t]he mandatory factors indicated in AR 5120:1-1-07 were considered." The box is marked to indicate that the factors were considered.

{¶ 12} 5. Section 3(B) asks the parole board to provide a "Rationale" for the decision. It also requests "specific factors relevant to the offense and offender." In the space provided, the parole board states:

> Inmate has served over 327 month[s] for these heinous offenses of extreme violence. Inmate has had deplorable institutional conduct since his incarceration. Inmate has engaged in some risk relevant programming and self-help guides. Inmate could use additional risk relevant programming to address his risk factors associated with both his crimes of conviction and his conduct. Inmate's time served does not outweigh the inmates, heinous offense, poor conduct. Inmate release at this time would not be in the best interest of society and would place undue risk on the community.

{¶ 13} 6. Section 4 of the OAPA form asks the parole board to mark a box, as appropriate, aside pre-printed reasons supporting the decision to deny parole. On the form, the parole board marked the boxes aside the following pre-printed statements:

> There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice or be consistent with the welfare and security of society.

> There is substantial reason to believe that due to serious infractions of division level 5120:9-06 of the Administrative Code, the release of the inmate would not act as a deterrent to the inmate or to other institutionalized inmates from violating institutional rules.

{¶ 14} 7. Section 5 of the OAPA form asks the parole board to list the "Time Served to Date." In the space provided, 328 months are listed.

{¶ 15} Section 5 of the OAPA form also asks the parole board to state the number of months to the next hearing date. In the space provided, 119 months are listed. The "Central Office Board Review" recommends that further review be continued to February 1, 2026.

{¶ 16} 8. Respondent stipulates to the above-described "Ohio Parole Board Decision and Minutes" that is appended to relator's complaint.

{¶ 17} 9. According to the complaint:

> Relator raises both Due Process and Equal Protection argument[s] herein, because the Decision mentioned above show[s] clear ambiguity in the decision making process by the Ohio Adult Parole Board and those decision[s] reek of discrimination couched in terms of Black and White.
>
> It appears that White Inmates with more egregious crimes are paroled before the expiration of their time and a long way from the minimum eligibility requirements, where inmates like relator, are denied parole based upon factors when reviewed will show that the claimed deplorable institutional conduct is falsely represented.

{¶ 18} 10. In his complaint, relator endeavors to compare his situation with respect to parole with two alleged former inmates of the Ohio prison system. Those two former inmates are identified by relator as Richard Brand and Gregory Scott Winship.

{¶ 19} 11. With respect to Richard Brand, relator alleges in his complaint:

> *Mr. Brand was seen by the Adult Parole Board in February of 2010, was considered at that time for Parole after being denied 3 times prior.*
>
> *Mr. Brand was found guilty and sentenced in 1994 to 15 years-to-Life Consecutively for five counts of Murder.*
>
> *Mr. Brand was Parole[d] in March of 2010, after having served 16 years.*
>
> *Statements made by The Adult Parole Board:*
>
> *"Mr. Brand made positive Institutional adjustment and has extensive community support for his release on parole at this time."*

(Emphasis sic.)

{¶ 20} 12.  In support of his allegations regarding Richard Brand, relator appends to his complaint a copy of a news article from "Cleveland.com" dated February 10, 2010.

{¶ 21} 13.  According to the copy of the appended news article consisting of 11 paragraphs, the news article states in part:

> The one-time disciple who testified against his leader Jeffrey Lundgren about the Kirtland cult killings is expected to be released from prison as early as March 29.
>
> Richard Brand, 46, has only to file a plan detailing where he will live once released. When that plan is approved, he will be released from prison on or after March 29, a spokeswoman for the Ohio Parole Board said.
>
> He will have served 16 years in prison. He was sentenced in 1994 to 15-years-to-life after he was convicted of five counts of murder.
>
> * * *
>
> Brand assisted Lundgren in killing the Averys. He later testified against Lundgren, providing details of the murders that helped convict the cult leader and others, in exchange for a chance at parole one day.
>
> * * *
>
> Brand was sentenced in 1994[,] had been denied parole three times in the past. There was a full board hearing on Jan. 27 during which three members of the victims' family spoke in opposition to the release.
>
> In granting the parole, the Ohio Parole Board stated that Brand had "made a positive institutional adjustment and has extensive community support for his release on parole at this time."

{¶ 22} 14.  With respect to former inmate Gregory Scott Winship, relator alleges in his complaint:

> *Mr. Winship, was convicted to 15-years-to-Life, for Counts 6, 7, 8, 9, and 10, of his Indictment, and those Conviction[s] were to [be] served Consecutively to each other.*

> *Mr. Winship also has been paroled by the Ohio Adult Parole Board.*

(Emphasis sic.)

{¶ 23} 15. In support of his allegations regarding Mr. Winship, relator appends a copy of "Docket Information" from the Lake County Clerk of Courts relating to case No. 90CR-18.

{¶ 24} 16. Under the heading "Conclusion," the complaint presents four paragraphs. The second paragraph under "Conclusion," states:

> In support of his equal protection contentions, relator's complaint alleges that defendants systematically treated persons of similar situations dissimilarly, to the extent that he believes that these questions assert that he was not given a meaning[ful] hearing, but if the Respondents can show which [criteria] they used in the aforementioned cases, then relator, would yield to those explanations, but relator believes that there are no viable explanation[s] that can be stated.

{¶ 25} 17. On November 9, 2017, respondent filed its answer to the complaint.

{¶ 26} 18. On November 16, 2017, the magistrate issued an order setting forth a schedule for the filing of evidence and briefs. The order provided that the stipulated or certified evidence shall be filed on or before December 4, 2017, and that relator's brief shall be filed on or before December 9, 2017.

{¶ 27} 19. On December 4, 2017, respondent moved for an extension of time to file the stipulation of evidence on or before January 3, 2018. The magistrate granted the motion and also adjusted the briefing schedule such that relator's brief shall be filed on or before January 18, 2018.

{¶ 28} 20. On December 11, 2017, relator filed a one-page document captioned "Judicial Notice." In the document, relator requests that this court take judicial notice that relator "is submitting the Evidence in this matter late due to circumstances beyond his control."

{¶ 29} 21. Also on December 11, 2017, relator filed a document which is captioned in part as "Presentation of Evidence."

{¶ 30} The document is, in actuality, a motion that this court accept an exhibit appended to the motion. The motion states:

> Relator prays that this Honorable Court accepts the documentation from accounts given in Newspaper Articles referring to recent Parole Decision, decisions that relator a State prisoner would not be privy to, that are maintained in other inmate[']s records.
>
> Relator prays that this submitted evidence will suffice at this time, as preliminarily acceptable evidence.

{¶ 31} The exhibit appended to relator's December 11, 2017 motion consists of two news articles. The first news article is a two-page article published by the Akron Beacon Journal on April 30, 2014. The news article is captioned "Troy Busta recounts death of Portage County woman; attorneys for Randy Resh, Bob Gondor attempt to impeach testimony." That news article consists of ten paragraphs. The news article states in part:

> Troy Busta, who was sent to prison 25 years ago in the strangulation death of a Randolph Township woman, gave a detailed description Wednesday about how the slaying occurred during a violent struggle in which two other accomplices were involved.
>
> Busta's testimony came on the eighth day of a Portage County civil trial that could determine the innocence of alleged accomplices Randy Resh and Bob Gondor.
>
> They were exonerated for the murder following a 2007 retrial, but if they do not win in this phase, they can't take the final step in their civil suit: arguments for possible monetary damages in the Ohio Court of Claims for wrongful conviction.

{¶ 32} The second news article appended as an exhibit to relator's December 11, 2017 motion is a one-page news article published by the "Record-Courier" on November 22, 2017. That news article states:

> Troy J. Busta was 21 when he entered the Ohio prison system in March 1989 — sentenced to 15 years to life in prison for the 1988 murder of a Randolph woman.
>
> The Hiram Township man will be 50 years old in April 2018 when he is finally released, the Ohio Parole Board recently announced.

In one of the most controversial murder cases in Portage County history, Busta has spent the last 28 years in prison for a crime that two other Portage County men were convicted of, based in part on his testimony.

Busta claimed he and Robert Gondor helped hold Connie Nardi down while Randy Resh choked her to death in August 1988. Despite that, both Resh and Gondor are now free men, having been declared "actually innocent" by a judge in 2014.

Attorney Oliver Koo, who represented Busta before the parole board, confirmed his client will be released next year. However, he said he had "no comments other than being grateful to the parole board" for approving Busta's release.

Portage County Prosecutor Victor Vigluicci said his office sent a letter to the parole board in support of the Busta's release.

"We've done that probably the last couple of times" Busta has come up for parole, Vigluicci said.

{¶ 33} 22. On December 15, 2018, the magistrate issued an order that respondent file a written response to relator's request to submit the news articles as evidence.

{¶ 34} 23. On January 3, 2018, respondent filed a document captioned "Respondent's Response to Relator's Submission of Evidence and Respondent's Submission of Statement of Position." Respondent states:

Thomas asks the Court to rely on newspaper articles that in all probability would never meet the threshold evidentiary test for evidence under Ohio Rules of Evidence. Respondents contend these matters are hearsay — if not hearsay within hearsay and there is no showing of reliability. Respondents do not stipulate to these exhibits.

{¶ 35} 24. On January 22, 2018, relator filed a document captioned "Relator's Opposition to Respondents Response to Relator's Submission of Evidence and Respondents Submission of Statement of Position." In the document, relator states:

The real issue that the Res[p]ondent is not answering or bring to the [Court's] attention, is the abuse of power that they are exercising in Parole decisions, at face value, the Adult Parole Board's decisions are invariably seeming to only see white faces as having value for paroles, where other inmates in

lesser conviction conditions are being systematically being denied opportunities for paroles, this usurpation of power that the Ohio Adult Parole Authority is exercising runs afoul of authority delegated to them by the Legislature of Ohio.

Where Courts have sentenced inmates to extremely long sentences and the Parole Board disregards those sentences, and Parole those inmates but deny other similarly or less situated, begs the question of how the decisions are being determined, this is the question that arises in this Complaint for Writ of Mandamus, to have the Respondent answer that question, and determine if all inmates are receiving meaningful hearings.

{¶ 36} 25. Earlier, on January 19, 2018, relator filed his merit brief which he calls a "jurisdictional brief."

{¶ 37} 26. On February 5, 2018, respondent filed its merit brief.

{¶ 38} 27. On April 11, 2018, this action was submitted to the magistrate for his magistrate's decision on the evidence and briefs filed in this action.

Conclusions of Law:

{¶ 39} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 40} In his brief, relator sets forth what he calls the "issue for review." Relator states:

To succeed on a claim challenging a parole release decision and the broad discretion afforded a parole authority for purposes of establishing a violation of equal protection, a complaining party must show "exceptionally clear proof" that the parole board abused its discretion. Specifically, a prisoner must show "purposeful discrimination" and then establish that the discrimination had a discriminatory effect on him.

(Relator's Brief at 3.)

{¶ 41} Relator's statement of the "issue for review" is apparently taken from this court's decision in *Mayrides v. Ohio State Parole Auth.,* 10th Dist. No. 97APE08-1035 (Apr. 30, 1998). In *Mayrides,* ruling on the eighth assignment of error, this court states:

To succeed on a claim challenging a parole release decision and the broad discretion afforded the Parole Authority for

> purposes of establishing a violation of equal protection, a complaining party must show 'exceptionally clear proof' that the board abused its discretion. (Citations omitted.) Specifically, the prisoner must show 'purposeful discrimination' and then establish that the discrimination had a discriminatory affect on him." *Nedea v. Voinovich*, 994 F. Supp. 910, 1998 U.S. Dist. LEXIS 2057 (N.D.Ohio 1998). Thus, "an equal protection plaintiff cannot prevail if the defendants have legitimate, non-discriminatory reasons for their actions." *Id.*, citing *Hunter v. Underwood* (1985), 471 U.S. 222, 227-228, 105 S. Ct. 1916, 85 L. Ed. 2d 222.

{¶ 42} This action should be decided on narrow grounds. In respondent's brief, respondent argues:

> Thomas asks the Court to rely on newspaper articles that in all probability would never meet the threshold evidentiary test for evidence under Ohio Rules of Evidence. Respondents contend these matters are hearsay — if not hearsay within hearsay and there is no showing of reliability. Respondents do not stipulate to these exhibits.

(Respondent's Brief at 8.)

{¶ 43} Loc.R. 13(G) of the Tenth Appellate District, captioned "Presentation of Evidence," provides:

> To facilitate the consideration and disposition of original actions, counsel should, whenever possible, file an agreed statement of facts.
>
> Unless the parties enter into a stipulation concerning the evidence to be submitted to the Court and attach to the stipulation legible copies of such evidentiary materials relevant to the determination of the action, each party shall file with the Court legible certified copies of evidentiary materials the party feels relevant to the issues before the Court.

{¶ 44} The copies of news articles that relator endeavors to submit are not evidence on which this court can rely.

{¶ 45} Respondent has not stipulated to the news articles as evidence to be considered in this action. Nor are the news articles "certified copies of evidentiary

materials." Thus, relator has failed to submit the evidentiary materials he would need to support any viable theory for relief in mandamus.

{¶ 46} In mandamus, the relator has the burden to establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the respondent, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth,* 131 Ohio St.3d 55, 2012-Ohio-69, ¶ 16.

{¶ 47} The standard of proof in mandamus cases is proof by clear and convincing evidence. *State ex rel. Stevens v. Indus. Comm.,* 10th Dist. No. 10AP-1147, 2012-Ohio-4408, ¶ 7, citing *State ex rel. Doner v. Zody,* 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 55.

{¶ 48} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).