IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 03, 2014

## ANDREW J. BRADEN, III v. TENNESSEE BOARD OF PROBATION, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 13430II     Carol L. McCoy, Chancellor**

_____

**No. M2013-02036-COA-R3-CV - Filed November 4, 2014**

_____

This is a *pro se* appeal from a denial of parole. Inmate/Appellant avers several problems surrounding his parole hearing that he claims violate his due process and equal protection rights, and violate the *ex post facto* constitutional prohibition. Because a prisoner has no liberty interest in release on parole before the expiration of his sentence, due process protections do not attach to parole determinations. Because, at the time of Appellant's crime and conviction, the law regarding parole gave total discretion to the Board and authorized denial if the Board found that parole would depreciate the seriousness of the crime committed, application of this ground for denial of parole does not violate *ex post facto* prohibitions. Because Appellant has failed to prove that race was an issue in the Board's decision to deny him parole, no equal protection violation was shown. Consequently, we affirm the trial court's dismissal of the petition upon grant of summary judgment. Affirmed and Remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed and Remanded**

KENNY W. ARMSTRONG, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J., joined. J. STEVEN STAFFORD, P.J., W.S., filed a dissenting opinion.

Andrew J. Braden, III, Only, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter, Arthur Crownover, II, Senior Counsel,

1

Civil Rights and Claims Division, Nashville, Tennessee, for appellees, Tennessee Board of Probation and Parole, Charles Traughber, and Amanda Fisher.

**OPINION**

Andrew J. Braden, III ("Appellant") is an inmate of the State of Tennessee Department of Correction. He is African-American. In 1981, Mr. Braden was convicted of Murder 1 and Robbery Armed with a Deadly Weapon. He received a life sentence for Murder 1. For the robbery charge, Mr. Braden received a 35-year sentence, which expired on November 5, 2005. In addition, Appellant received a five-year sentence for Receiving Stolen Property; this conviction resulted from Mr. Braden being in possession of guns during a traffic stop, which occurred a few weeks before the events that led to the murder and robbery convictions. Mr. Braden's Murder 1 and Robbery Armed with a Deadly Weapon convictions arose out of incidents that occurred on April 4, 1981. On that date, Mr. Braden and his co-defendant committed Armed Robbery of a fast-food restaurant. While fleeing the scene, they were observed by a Columbia, Tennessee police officer driving recklessly. The officer initiated a traffic stop, during which a scuffle ensued. Mr. Braden wrestled the officer's service revolver from him and fired multiple shots into the officer's body, causing his death.

Appellant first became eligible for parole in 2002 and received an initial parole grant hearing on October 8, 2002. At that time, the Tennessee Board of Probation and Parole (the "Board") declined Mr. Braden parole due to the seriousness of his offense. Mr. Braden received his second parole review hearing on October 4, 2007. The Board again denied parole based upon the seriousness of the offense. Mr. Braden's next parole hearing was held on October 4, 2012, and this hearing is the subject of the instant appeal. Charles Traughber, the Chairman of the Board, conducted Mr. Braden's October 2012 hearing. According to Chairman Traughber's affidavit, he "conducted the hearing and voted to decline parole, due to the seriousness of the offense. . . . Board Members Patsy Bruce, Lisa Jones, and Yusuf Hakeem adopted my vote and the decision became final on October 11, 2012." By letter of October 16, 2012, Mr. Braden was notified of the Board's decision. Pursuant to its authority, under Tennessee Code Annotated Section 40-35-503, the notification letter specifically stated that the Board's decision to deny parole was based upon its finding that "[t]he release from custody at this time would depreciate the seriousness of the crime of which the offender stands convicted or promote the disrespect of the law."

On November 8, 2012, the Board received Mr. Braden's request for an appeal hearing. As grounds for his appeal request, Mr. Braden averred that, "[a]t the time of my conviction[,] the seriousness of offense statute (rule/guideline) was not included in the Tennessee Parole Board Statute. . . ." Mr. Braden's request for appeal was denied by letter dated January 22, 2013.

2

On March 26, 2013,[1] Appellant filed a Petition for Judicial Review under Common

---

[1] We pause to address what, at first, appears to be a timeliness issue concerning Mr. Braden's petition for writ of certiorari. Tennessee Code Annotated Section 27-9-102 provides the time for filing a petition for writ of certiorari:

> Such party shall, within sixty (60) days from the entry of the order or judgment, file a petition of certiorari in the chancery court of any county in which any one (1) or more of the petitioners, or any one (1) or more of the material defendants reside, or have their principal office, stating briefly the issues involved in the cause, the substance of the order or judgment complained of, the respects in which the petitioner claims the order or judgment is erroneous, and praying for an accordant review.

This sixty-day statute of limitations "is mandatory and jurisdictional, and the failure to file a petition within that period of time deprives the court of subject matter jurisdiction." *Gore v. Tennessee Department of Correction*, 132 S.W.3d 369, 379 (Tenn. Ct. App. 2003). Accordingly, although the issue of the timeliness of the petition for writ of certiorari was not raised in the trial court, or in this appeal, it is incumbent upon this Court to address, *sua sponte*, any question concerning jurisdiction. We note that the date that the TDOC Commissioner denies the prisoner's appeal is the latest possible date on which the statute of limitations begins to run. *See, e.g., Wilson v. Tennessee Department of Correction*, No. W2005–00910–COA–R3–CV, 2006 WL 325933, at *5 (Tenn.Ct.App. Feb. 13, 2006). Here, the Board denied Mr. Braden's appeal by letter of January 22, 2013. According to the foregoing authority, the 60-day statute of limitations for filing the petition for writ of certiorari would run from that date.

Although Mr. Braden's petition for writ of certiorari was not stamped "filed" in the trial court until March 26, 2013, the "Verification" and "Notary" sections of the petition indicate that it was submitted on March 22, 2013. It is undisputed that Mr. Braden was incarcerated at the time he filed his petition. Accordingly, Rule 5.06 of the Tennessee Rules of Civil Procedure, commonly referred to as the "prisoner mailbox rule," is triggered. The rule states in relevant part:

> If papers required or permitted to be filed pursuant to the rules of civil procedure are prepared by or on behalf of a *pro se* litigant incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing. This provision shall also apply to service of paper by such litigants pursuant to the rules of civil procedure. "Correctional facility" shall include a prison, jail, county workhouse or similar institution in which the pro se litigant is incarcerated. Should timeliness of filing or service become an issue, the burden is on the pro se litigant to establish compliance with this provision.

Tenn. R. Civ. P. 5.06. Furthermore, Tennessee Rule of Civil Procedure 6.01 provides, in relevant part, that:

(continued. . .)

3

Law Writ of Certiorari in the Chancery Court for Davidson County.[2]  The petition was filed against the Board, Chairman Traughber, and Amanda Fisher, the Parole Hearing Director

---

(continued. . .)

> In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the date of the act, event or

default after which the designated period of time begins to run is not to be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday as defined in Tenn. Code Ann. § 15-1-101, or, when the act to be done is the filing of a paper in court, a day on which the office of the court clerk is closed or on which weather or other conditions have made the office of the court clerk inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

Based upon the foregoing rules, we would not count January 22, 2013 (as that was the date the statute of limitations began to run).  Accordingly, the 60 day statute of limitations would have expired on March 23, 2013. However, March 23, 2013 was a Saturday.  This fact would extend the 60 days (under Tennessee Rule of Appellate Procedure 21(a)) to the following Monday, March 25, 2013.  Because Mr. Braden was incarcerated, Tennessee Rule of Civil Procedure 5.06 operates to extend the tolling date further by replacing the received/filed date with the date the petition was presented for mailing from the prison.  As noted above, the "Verification" on the petition indicates that it was "submitted" on March 22, 2013.  This would be within the 60 day period.  However, even if the "verification" on the petition is not sufficient proof of presentation for mailing, we know that the document was received (or at least file stamped) on March 26, 2013.  Because Mr. Braden was incarcerated on March 26, 2013, he could not have hand-delivered his petition.  Accordingly, if the statute of limitations expired on March 25, 2013, it is a logical inference that Mr. Braden mailed his petition on or before March 25, 2013 if the petition was received and stamped by the clerk on March 26, 2013.  Of course, we are cognizant of the Rule 5.06 language that places the burden on the prisoner to establish timeliness of his or her filing, i.e., "[s]hould timeliness of filing or service become an issue, the burden is on the *pro se* litigant to establish compliance with this provision."  Here, however, timeliness was not a issue that was raised in the trial court or on appeal.  Nonetheless, because we have a duty to address any issues that affect jurisdiction, and because, on its face, the March 26, 2013 file date of the petition appears to be late, we have attempted to parse the relevant procedure in reaching our determination that jurisdiction lay with the trial court in this case.

[2] Persons dissatisfied with the Board's decisions may obtain judicial review using a petition for common law writ of certiorari. As discussed, *infra*, this petition limits the scope of review to a determination of whether the Board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily.  ***Turner v. Tennessee Bd. of Paroles***, 993 S.W.2d 78, 80 (Tenn. Ct. App.1999); ***South v. Tennessee Bd. of Paroles***, 946 S.W.2d 310, 311 (Tenn. Ct. App. 1996);  ***Powell v. Parole Eligibility Review Bd.***, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). The petition does not empower the courts to inquire into the intrinsic correctness of the Board's decision. ***Robinson v. Traughber***, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999); ***Turner***, 993 S.W.2d at 80. Thus, the courts will not use the common law writ to grant relief when the Board's decision was arrived at in a constitutional and lawful manner. Tenn. Code Ann. § 40–28–115(c); ***Arnold v. Tennessee Bd. of Paroles***, 956 S.W.2d 478, 480 (Tenn. 1997); ***Powell***, 879 S.W.2d at 873.

("Ms. Fisher," and together with the Board and Chairman Traughber, "Appellees").[3] In his petition for writ of certiorari, Mr. Braden averred, *inter alia*, that the Appellees "violated the [Board] Rules, Policies and Procedures" by "demonstrat[ing] bias in favor of the victim[']s family and friends who had appeared at the hearing to protest Mr. Braden's possible parole." In addition, Mr. Braden's petition alleged that the Board's use of the "statutory catchall 'Seriousness of the Offense' as a reason to deny him parole was a violation of the statutes that were in effect at the time Mr. Braden committed the crime. . . ." In his petition, Mr. Braden also indicated that he had requested certain statistics, pursuant to the Public Records Act, "to demonstrate that the [Board] arbitrarily and capriciously applies the 'seriousness of the offense' criteri[on] to deny parole to black males who have committed crimes against white victims while releasing white prisoners who have committed crimes against black or white victims."

In response to Mr. Braden's petition, on June 12, 2013, the Appellees filed a joint motion for summary judgment. As grounds for their motion, Appellees averred that Mr. Braden's "equal protection claim should be dismissed as conclusory and not supported by the evidence." Furthermore, Appellees asserted that Mr. Braden had failed "to state an equal protection claim regarding comparisons to white inmates." In addition, the Appellees noted that, "[i]n 1981, seriousness of offense was a parole standard for Class X felons; thus no *ex post facto* violation."[4] In support of their motion, Appellees filed Chairman Traughber's affidavit, and a statement of undisputed material facts. Mr. Braden opposed the motion for summary judgment by filing his own affidavit and version of undisputed facts. In his affidavit, Mr. Braden averred, *inter alia*, that before the October 2012 parole hearing began, "Charles Traughber engaged in *ex parte* communication with the victim's family and the individuals who appeared in opposition [to Mr. Braden's parole]." Noting that Chairman Traughber had denied any *ex parte* communication in his affidavit, *see* discussion *infra*, Mr Braden cited the recording of the hearing, wherein Chairman Traughber allegedly stated that "I've asked that we have five representative from each [side, opposition and support] to speak and we hear from support first." (Bracketed language in original). Based upon this statement, Mr. Braden argued that, "[i]f Charles Traughber did not communicate with the participants prior to the hearing beginning, then when did he ask for just five people from each side to speak?"

---

[3] Chairman Traughber and Ms. Fisher are sued in their official capacities only.

[4] As explained in Bryan Garner, A Dictionary of Modern Legal Usage 342 (2nd ed.1995), the term "*ex post facto*" translates to "after the fact." The phrase is used "in the sense of 'retroactive,' as in *ex post facto* laws. E.g., 'Application of the newly enacted burden to this defendant runs afoul of the *ex post facto* prohibition [i.e., the prohibition against enacting laws that punish retroactively].'" *Id.*

Mr. Braden's affidavit also disputed Chairman Traughber's statement that he did not engage in discrimination when deciding Mr. Braden's case. Specifically, Mr. Braden stated that:

> Mr. Traughber alleges that parole decisions are made on a case by case basis, and that I am not similarly situated to other offenders since the facts and circumstances of each offender's case are unique. This is false. I am similarly situated to the other offenders that I used as examples in the original filing documents [Mr. Braden is referring to Exhibit 5 to his petition for writ of certiorari. In this exhibit, Mr. Braden has allegedly compiled information gleaned from his public records request. The exhibit is a list of five prisoners, including himself. Three of the prisoners are Caucasian, and two are African-American. All five prisoners were allegedly convicted of shooting a police officer. The "status" of the prisoners is listed. Each of the Caucasian prisoners' status is listed as "paroled"; each of the African-American prisoners' status is listed as "incarcerated."]. Each of us killed a law enforcement officer during the course of a robbery or burglary. The ONLY appreciable difference between myself and these other prisoners is that I am black and they are white.

(Emphasis in original).

Following a hearing on the Appellees' motion for summary judgment, the trial court entered an order on September 25, 2013. The trial court granted the motion for summary judgment on the following grounds, as stated in the order:

> While the Petitioner has established that he is a black male and thus, a member of a protected group, he has failed to show that he has been discriminated against based on race.
>
> *               *               *
>
> The Petitioner's argument that proper procedure was not followed at his parole hearing is not persuasive. The Court notes that parole is a privilege and not a right. . . . Without such a liberty interest, due process does not attach, and there are no constitutionally required procedures for a parole hearing, as opposed to a hearing on parole revocation.

6

Even if the Petitioner could demonstrate that the Chairman of the Parole Board engaged in an ex parte communication with the victim's relatives, it would not provide a basis for reversing or vacating the Board's legally supported decision to deny parole under the alleged facts. . . . The Tennessee Supreme Court has held that the Board may consider "seriousness of the offense" when determining whether release on parole is appropriate. . . . Thus, the Board had a valid statutory basis underlying its decision. Further, in 2009, the Petitioner received two Class A disciplinary actions for conspiring to violate state law— Larceny of Commissary and Coercing a Witness. Taking these factors into account, the Court cannot second guess the decision of the Board to deny parole.

The trial court also granted the motion for summary judgment upon its finding that there was no *ex post facto* violation based upon the Board's use of the "seriousness of the offense" criterion as a basis for its denial of parole. As discussed, *infra*, the trial court cited the law that was in effect in 1981, at the time Mr. Braden committed his crimes. Contrary to Mr. Braden's position, and as discussed below, the applicable law, i.e., the 1981 version of the statute, did allow for consideration of the seriousness of the prisoner's crime when considering parole. Based upon these grounds, the trial court granted summary judgment as a matter of law, thus upholding the Board's decision to deny Mr. Braden parole.

Mr. Braden appeals. He raises three issues for review, as stated in his brief, and slightly modified below:

1. The [Appellees] violated the Board's Rules and Regulations when [they] demonstrated bias in favor of the protestors who had appeared at Mr. Braden's parole hearing.

2. The [Appellees] violated Mr. Braden's right to due process by denying him parole on the ground of "seriousness of the offense".

3. The application of Tennessee Code Annotated Section 40-35-503(b)(2), without any guidelines determining its application or use, allows the Board to engage in demonstrable racism without

7

appearing to do so.[5]

We are cognizant of the fact that Appellant is an inmate in a correctional facility and is self-represented in this case. However, it is well-settled that "*pro se* litigants are held to the same procedural and substantive standards to which lawyers must adhere." ***Brown v. Christian Bros. Univ.***, No. W2012–01336–COA–R3–CV, 2013 WL 3982137, at *3 (Tenn. Ct. App. Aug. 5, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014). As explained by this Court:

---

[5] There has been some confusion in the record as to whether Mr. Braden's appeal was properly filed. Mr. Braden filed his notice of appeal, titled "Notice of Intent to Appeal," on August 27, 2013, which was before the order appealed was entered on September 25, 2013. On September 24, 2013, this Court entered an order compelling Mr. Braden to either (1) pay the full amount of litigation tax, (2) comply with the statutory mandate by submitting the required documentation and partial payment; or (3) to show cause why the appeal should not be dismissed. Mr. Braden did not comply with the September 24, 2013 order. Consequently, on October 17, 2013, this Court entered an order dismissing the appeal.

While the foregoing procedure was pending in this Court, Mr. Braden filed a motion to clarify his indigent status in the trial court, and the trial court had not yet ruled on this motion when this Court dismissed the appeal. By order of October 22, 2013, the trial court explained:

> As a preface to [the September 25, 2013 final order], the court had issued a March 28, 2013 order requiring [Mr. Braden] to make a partial payment of $28.39 in order to proceed *in forma pauperis*. [Mr. Braden] provided this payment in a letter dated April 2, 2013. Accordingly, in the Order of September 25, 2013, the court stated that "as the Petitioner has submitted all necessary forms and has made a partial filing fee payment as required by Tenn. Code Ann. §41-21-807, this case will be allowed to proceed." The court here clarifies that [Mr. Braden] was allowed to proceed *in forma pauperis* in the present case.
>
> As stated above, this court did not issue a final order in this case until September 25, 2013. It appears to the Court that [Mr. Braden] may not have received a copy of the final order. It also appears that [Mr. Braden's] appeal may have been prematurely dismissed.

Following entry of the foregoing order in the trial court, on October 30, 2013, Mr. Braden petitioned this Court with a motion to reconsider the dismissal of the appeal. Upon due consideration, we entered an order on November 7, 2013, wherein we noted that: (1) the prematurely filed notice of appeal was sufficient to perfect Mr. Braden's appeal pursuant to Tennessee Rule of Appellate Procedure 4(d) ("A prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof."); (2) Mr. Braden had provided documentation sufficient to satisfy the requirements of Tennessee Code Annotated Section 41-21-807; (3) although Mr. Braden's evidence of compliance with Tennessee Code Annotated Section 41-21-807 was not timely, the "tardiness may have been due to an error on the part of the courts related to the premature filing of his Notice of Appeal, which started the clock running on the payment of filing fees even before a final order was filed in the court below." Based upon these findings, we granted Mr. Braden's motion and reinstated his appeal.

> Parties who decide to represent themselves are entitled to fair
> and equal treatment by the courts. The courts should take into
> account that many *pro se* litigants have no legal training and
> little familiarity with the judicial system. However, the courts
> must also be mindful of the boundary between fairness to a *pro
> se* litigant and unfairness to the *pro se* litigant's adversary. Thus,
> the courts must not excuse *pro se* litigants from complying with
> the same substantive and procedural rules that represented
> parties are expected to observe.

*Jackson v. Lanphere*, No. M2010–01401–COA–R3–CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)).

We note at the outset that the standard of review under a common law writ of certiorari is very narrow; it covers only an inquiry into whether the Board has exceeded its jurisdiction or has acted illegally, fraudulently, or arbitrarily. *Settle v. Tennessee Dept. of Correction*, 276 S.W.3d 420, 425 (Tenn. Ct. App. 2008) (citing *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). This Court, like the trial court, does not review the correctness of the decision, but only considers the manner in which the decision was reached. *Id*. If the Board reached its decision in a constitutional or lawful manner, then the substantive decision is not disturbed. *Id*.

This case was adjudicated upon the granting of summary judgment in the trial court. A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. According to the Tennessee Legislature:

> In motions for summary judgment in any civil action in
> Tennessee, the moving party who does not bear the burden of
> proof at trial shall prevail on its motion for summary judgment
> if it:

> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (applying only to claims filed after July 1, 2011). Furthermore, in the recent case of **Smith v. UHS of Lakeside, Inc., et al.**, No. W2011–02405–SC–R11–CV, ---- S.W.3d ----, 2014 WL 3429204 (Tenn. July 15, 2014), the Tennessee Supreme Court unanimously held that trial judges must explain their reason for granting or denying a motion for summary judgment. The Court noted that deciding a motion for summary judgment is a "high judicial function," and held that requiring the court to state its grounds "promotes respect for the judicial system" and ensures the decision is "the product of the trial court's own independent analysis." **Id**. at *8. Although the order appealed in this case was entered before the ruling in **Smith**, we acknowledge that the trial court did a thorough job of explaining its reasons for the grant of summary judgment in this case. Such specific explanation as is found in this order facilitates our appellate review and aids us in the speedy and just resolution of the appeal.

As discussed briefly above, Mr. Braden's assertion that the Board erred in denying him parole is based upon three grounds: (1) violation of his equal protection rights; (2) the Board's alleged failure to follow proper procedure (i.e., that Chairman Traughber engaged in *ex parte* communication at the parole hearing); and (3) that the Board's ground for denial of parole, i.e., "seriousness of the offense," was an *ex post facto* application of the law. We will address each of these grounds against the record.

### Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. Although prisoners are not a suspect class, **Wilson v. Yaklich**, 148 F.3d 596, 604 (6th Cir. 1998), the Equal Protection Clause protects inmates from invidious discrimination based upon race. *See, e.g., **Wolff v. McDonnell***, 418 U.S. 539 (1974); **Lee v. Washington**, 390 U.S. 333 (1968). To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him or her. **McClesky v. Kemp**, 481 U.S. 279, 292 (1987); **General Bldg. Contractors Ass'n, Inc. v. Pennsylvania**, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. **Copeland v. Machulis**, 57 F.3d 476, 480 (6th Cir. 1995).

Based upon the foregoing authority, in order to establish an equal protection violation, Mr. Braden has the burden to prove that he is a member of a protected class, and that he has been intentionally discriminated against because of his membership in that class. *McMahon v. Tennessee Dept. of Correction*, No. M2005-01625-COA-RC-CV, 2007 WL 2198209, at *3 (Tenn. Ct. App. July 26, 2007) (citing *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). Although some factual bases for a 42 U.S.C. §1983 claim may be set forth in the pleadings, *see Chapman v. City of Detroit*, 808 F.2d 459 (6th Cir. 1986), it is well settled that a complaint alone is not sufficient to state a cause of action under 42 U.S.C. §1983. *Smith v. Rose*, 760 F.2d 102 (6th Cir. 1985). In his petition, Mr. Braden claims that the Board "arbitrarily and capriciously applie[d] the 'seriousness of the offense' criteri[on] to deny parole to black males who have committed crimes against white victims while releasing white prisoners who have committed crimes against black or white victims in an egregious demonstration of racial bias. . . ." This conclusory statement is not sufficient to state an equal protection claim. Rather, Appellant has the burden to provide facts that demonstrate that it is more likely than not that he has been discriminated against due to race. *Ustrack v. Fairman*, 781 F.2d 573, 576 (6th Cir. 1986). In other words, Mr. Braden must set forth facts that show, or from which it might be reasonably inferred, that he was the victim of purposeful discrimination due to his race. *McClesky*, 481 U.S. at 292; *Washington v. Davis*, 426 U.S. 229, 240 (1976). In this regard, Mr. Braden's burden is very high. As succinctly explained by the Federal District Court for the Northern District of Ohio:

> To succeed on a claim challenging a parole release decision and the broad discretion afforded the Parole Authority for purposes of establishing a violation of equal protection, a complaining party must show "exceptionally clear proof" that the board abused its discretion. *McCleskey v. Kemp*, 481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Specifically, the prisoner must show "purposeful discrimination" and then establish that the discrimination had a discriminatory effect on him. *Id*. at 292. Accordingly, an equal protection plaintiff cannot prevail if the defendants have legitimate, nondiscriminatory reasons for their actions. *Hunter v. Underwood*, 471 U.S. 222, 227–28, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985) (citing *Village of Arlington Heights*, 429 U.S. at 265, stating that "[p]roof of racially discriminatory intent or purpose is required to show a violating of the Equal Protection Clause.").

*Nedea v. Voinovich*, 994 F. Supp. 910, 916-17 (N.D. Ohio 1998).

In its order, the trial court specifically held that "[a]lthough Mr. Braden has clearly established that he is a black male and, thus, a member of a protected group, from our review of the record, he has failed to show that he has been discriminated against based on race." In reaching this conclusion, the trial court relied upon documentation submitted by Chairman Traughber in support of the Appellees' motion for summary judgment. This statistical data concerns the rate of parole granted to offenders convicted of Murder 1 and First Degree Murder. Chairman Traughber noted that from 2002 to 2012, the Board conducted 1,138 parole grant hearings for offenders convicted of Murder 1 and First Degree Murder. The following chart, which was provided in connection with Chairman Traughber's affidavit, is a statistical breakdown of the decisions by the offenders' race:

| Race | Declined | Granted | Continued | Total Hearings | % of Hearings Resulting in Grants |
|------|----------|---------|-----------|----------------|-----------------------------------|
| Black | 242 | 131 | 107 | 480 | 27.29% |
| White | 427 | 146 | 78 | 651 | 22.43% |
| Other | 4 | 2 | 1 | 7 | 28.57% |

Although, by Exhibit 5 to his petition (discussed *supra*), Mr. Braden attempts to provide statistical data to indicate that the parole Board grants parole more often to Caucasian inmates, Mr. Braden's statistics are compiled with data from only five prisoners including himself. Furthermore, although Appellant states that Exhibit 5 was compiled from data he obtained from his public records request, there is nothing in the record to indicate exactly what public records he used to compile his statistics. The information charted above was compiled by Chairman Traughber and is based upon all parole hearings conducted for prisoners convicted of crimes similar to those for which Mr. Braden is incarcerated. In addition, while Mr. Braden's statistics are purportedly based upon five actual cases, Chairman Traughber's statistics are based upon all of the 1,138 parole hearings (for this type of offender) that were held between 2002 and 2012. Clearly, Chairman Traughber's statistics give a more realistic view of the percentage of paroles according to an inmate's race than do those provided by Mr. Braden in support of his position. As set out above, Chairman Traughber's statistics indicate that in fact, the Board granted 4.86% more paroles to African-American offenders than it did to Caucasian inmates who had committed similar offenses. Accordingly, from a statistical standpoint, Mr. Braden has not provided sufficient evidence to support his position that his parole was denied merely on the basis of race.

Although we have discussed the statistical data that was proffered in the instant case, it is not our intent to give the impression that statistics alone are sufficient to show any bias in parole

cases.  It is well settled that parole decisions are fact-intensive and focus on the individual prisoner seeking parole.  ***Hopkins v. Tennessee Bd. of Paroles and Probation***, 60 S.W. 79, 83 (Tenn Ct. App. 2001).  More importantly, equal protection of the law under "the Fourteenth Amendment guarantees equal laws, not equal results."  ***Personnel Adm'r of Mass. v. Fenney***, 442 U.S. 256, 273 (1979), *aff'd* ***Fenney v. Personnel Adm'r of Mass.***, 445 U.S. 901 (1980); *see also* ***NAACP v. Hunt***, 891 F.2d 1555, 1562 (11th Cir. 1990).  Absent an allegation of interference with a fundamental right or discriminatory treatment based on suspect classification, a plaintiff cannot maintain an equal protection claim because he or she was treated differently from others alleged to be similarly situated.  ***Booher v. U.S. Postal Serv.***, 843 F.2d 943, 944 (6th Cir. 1988).

In his affidavit, Chairman Traughber states, in relevant part, that:

> 16.  I have never considered the race of the offender and/or the victim as a factor when determining whether to grant or deny parole to any individual.
>
> *                              *                              *
>
> 18.  Parole decisions are made on an individual case-by-case assessment.  Mr. Braden is not similarly situated to other offenders since the facts and circumstances of each offender's case are unique.

As set out in full context above, in his affidavit, Appellant disputes Chairman Traughber's statements:

> Mr. Traughber alleges that parole decisions are made on a case by case basis, and that I am not similarly situated to other offenders since the facts and circumstances of each offender's case are unique.  This is false.  I am similarly situated to the other offenders that I used as examples in the original filing documents [Exhibit 5 to the original petition].

The Sixth Circuit Court of Appeals case, ***Henderson v. Bredesen****,* No. 3:04-0043, 2005 WL 2230033 (M.D. Tenn. Aug. 9, 2005), is analogous to the instant appeal.  In ***Henderson***, the plaintiff, an African-American inmate, was convicted of murder.  On appeal, the inmate alleged an equal protection violation and claimed that he was improperly denied parole on the basis of race.  The Sixth Circuit ruled that Mr. Henderson's allegations of purposeful discrimination were conclusory.  In reaching its decision that Mr. Henderson did not establish

13

that he was similarly-situated to the inmates mentioned in his complaint who had been granted parole, the Sixth Circuit noted that "[i]n order for the Plaintiff to be considered similarly situated to the prisoners treated differently for purposes of an equal protection analysis, he must show similarity in all relevant aspects of the parole decision." *Id*. at *3 (citing ***Ercegovich v. Goodyear Tire & Rubber Co.***, 154 F.3d 344, 352 (6th Cir.1998) (holding that employees must be similar in all relevant respects to be similarly situated)). Specifically, the court noted that although Mr. Henderson had established that the named inmates had similar sentences to his, he did not establish similarity in other relevant aspects, including the nature of their original offenses. *Id*. As in the instant case, in ***Henderson***, the Sixth Circuit pointed out that the defendants had provided statistical evidence establishing that Caucasian and Africa-American inmates who had received murder convictions had been granted and denied parole at a similar rate. *Id*. Finding that there was a legal basis for the denial of Mr. Henderson's parole, i.e., use of a deadly weapon in his original offense (he shot his victim five times in the head), the Sixth Circuit affirmed the trial court's grant of defendants' motion for summary judgment.

Likewise, in this case, the evidence establishes that race played no part in the Board's decision to deny Mr. Braden parole. Not only does Chairman Traughber specifically deny any racial motive, but the statistical data concerning the Board's parole decisions also shows that race has not been a factor in parole release decisions. Mr. Braden's countervailing statistics neither establish him as similarly situated to those four prisoners to whom he compares himself, nor is Appellant's data sufficient as it is only a sampling of five cases, including his own. For these reasons, and those enumerated above, Mr. Braden has failed to meet his burden to establish an equal protection violation.

### *Ex Parte* Communication by Chairman Traughber

We first note than an inmate has no liberty interest in parole in Tennessee. Accordingly, a prisoner has no due process rights in a parol hearing or appeal. Tennessee Code Annotated Section 40-35-503(b) provides, in pertinent part, that:

> (b) Release on parole is a privilege and not a right, and no inmate convicted shall be granted parole if the board finds that:
> (1) There is a substantial risk that the defendant will not conform to the conditions of the release program;
> (2) The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law;

Furthermore, Tennessee Code Annotated Section 40-28-117 provides, in relevant part that:

14

> Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that the prisoner, if released, will live and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society.

The purpose of due process is to protect an interest to which an individual has a legitimate claim of entitlement. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Based upon the foregoing statutes, in Tennessee, an inmate has no constitutional or inherent right to conditional release prior to the expiration of a valid sentence; accordingly, there is no constitutionally protected liberty interest in parole in our State. *Wright v. Trammell*, 810 F.2d 589 (6th Cir. 1987); *Kaylor v. Bradley*, 912 S.W.728, 733 (Tenn. Ct. App. 1995). Rather, the parole of Tennessee inmates is a matter solely within the discretion of state officials. *Wright*, 810 F.2d at 590-91. No due process rights exist if there is no liberty interest at issue. *Sandin v. Conner*, 515 U.S. 472 (1995).

In his petition, Mr. Braden avers that his parole hearing was flawed due to the Board Chairman's bias in favor of the victim's family and friends. Specifically, Appellant contends that Chairman Traughber showed bias by

> seating them first, having discussions with them outside of the presence of Mr. Braden and his supporters, and by allowing them to continue to speak well beyond the time limits that were imposed prior to the beginning of the hearing, and which time limits were followed regarding Mr. Braden's supporters.

In his affidavit in support of the motion for summary judgment, Chairman Traughber denied this allegation, stating:

> When conducting Mr. Braden's hearing, I followed all applicable statutes, rules and policies. I did not engage in *ex parte* communication with the victim's family or the individuals who appeared in opposition. The normal security procedures were followed by the Department of Correction staff while seating the visitors and Mr. Braden. Visitors are normally admitted in a staggered fashion to the hearing room and seated in separate groups for security reasons. I allowed ample opportunity for opposition and support to make statements and

15

present any information they wished to place before the Board. I additionally read into the record letters of support for Mr. Braden. I placed no time limits on individual statements.

As discussed above, a prisoner has no constitutionally protected liberty interest in parole. Tenn. Code Ann. §40-35-503(b). Without such liberty interest, due process does not attach, and there are no constitutionally required procedures for a parole hearing, as opposed to a hearing on parole revocation. *Morrissey v. Brewer*, 408 U.S. 471 (1972); *State v. Wade*, 863 S.W.2d 406, 408 (Tenn.1993) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn.1965)). Accordingly, even if we allow *arguendo* that Chairman Traughber engaged in some form of *ex parte* communication during the hearing, this fact would not provide a sufficient basis for reversing or vacating the Board's decision so long as the decision is legally supported. In this case, the Board denied Mr. Braden parole on the "seriousness of the offense" ground. We now turn to address whether this ground provided a sufficient legal basis for the decision. If so, we must affirm the Board.

## **"Seriousness of the Offense" /** *Ex Post Facto* **Application**

Rule 110-01-01-.06 of the Administrative Rules of the Tennessee Board of Parole contains a list of factors that the Board may consider in determining whether a prisoner should be granted parole. The Rule states, in relevant part, that:

> (1) Before granting or denying parole, the Board may apply the following factors to each eligible inmate to assist it in determining whether such inmate will live and remain at liberty without violating the law or the conditions of his/her parole:
> (a) The nature of the crime and its severity;
> (b) The inmate's previous criminal record
> (c) The inmate's institutional record;
>
> *            *                        *
>
> (g) The views of the community, victims of the crime or their family, institutional staff, parole officers, or other interested parties.

As noted above, the Board denied Mr. Braden parole, stating that "[t]he release from custody at this time would depreciate the seriousness of the crime of which the offender stands convicted or promote the disrespect of the law." Tenn. Code Ann. §40-35-503(b)(2). In addition to the Administrative Rule above, as noted by the trial court in its order, the

Tennessee Supreme Court has held that the Board may consider "seriousness of the offense" when determining whether release on parole is appropriate:

> In our view, consideration of the seriousness of the offense, the number of victims, and the risk to re-offend is appropriate to the parole decision. Consideration of these factors does not demonstrate that the Board acted illegally, fraudulently, arbitrarily, or in excess of its jurisdiction. Moreover, consideration of such factors does not implicate any constitutional right under the circumstances.

*Arnold*, 956 S.W.2d at 482-83. In addition, the United States Supreme Court has held that a parole board may properly consider the nature of an inmate's crime in determining whether to release him or her on parole:

> [T]he choice [to grant or deny parole] involves a synthesis of record facts and personal observation filtered through the experience of the decision maker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. This latter conclusion requires the Board to assess whether, in light of the nature of the crime, the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice.

*Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 8 (1979) (footnote omitted). Despite these rulings by both the United States Supreme Court and the Tennessee Supreme Court, Mr. Braden contends that the use of the Tennessee Code Annotated Section 40-35-503(b) "seriousness of the offense" criterion presents an *ex post facto* issue.

As discussed above, Appellant committed his crimes in 1981 and was convicted on August 25, 1981. At that time, Tennessee Code Annotated Section 39-5402 classified Murder in the First Degree as a Class X Felony. In 1979, the Class X Felonies Act was promulgated and codified at Tennessee Code Annotated Section 39-5401, *et seq*. This Act was still in effect at the time Mr. Braden was convicted and sentenced as a Class X Felony offender in 1981. At that time, Tennessee Code Annotated Section 40-3641 provided:

> (b) Release classification is a privilege and not a right, and no person convicted of a Class X felony shall be granted release

classification status if the authority finds that. . .

(2) The release from custody at the time would depreciate the seriousness of the crime of which the person stands convicted or promote disrespect for the law.

Based upon the foregoing statute, it is clear that in 1981 seriousness of the offense was a parole standard for Class X Felons.  Because the same standard existed in 1981 and 2012, Mr. Braden fails to state an *ex post facto* claim.  As explained by this Court in ***Phifer v. Tennessee Bd. of Parole***, No. M2000–01509–COA–R3–CV, 2002 WL 31443204 (Tenn. Ct. App. Nov. 1, 2002):

> [The petitioner] has failed to state a claim based upon the constitutional prohibition against *ex post facto* application of penal statutes found in both the United States Constitution, Article I, Section 10, and the Constitution of Tennessee, Article I, Section 11.  The *ex post facto* prohibition is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" ***California Dep't of Corr. v. Morales***, 514 U.S. 499, 504, 115 S.Ct. 1597, 1601 (1995). An *ex post facto* law "changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed." ***Weaver v. Graham***, 450 U.S. 24, 32–33, 101 S.Ct. 960, 966 (1981). The critical question in an *ex post facto* claim is "whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred." ***State v. Pearson***, 858 S.W.2d 879, 883 (Tenn.1993).
>
> Under both state and federal constitutions and cases interpreting them, two factors must be present to establish a violation of the *ex post facto* prohibition: (1) the law must apply retrospectively to events occurring before its enactment; and (2) it must disadvantage the offender affected by it. ***State v. Ricci***, 914 S.W.2d 475, 480 (Tenn.1996); ***Pearson***, 858 S.W.2d at 882 (quoting ***Miller v. Florida***, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451 (1987)). . . .
>
> Actions which extend parole eligibility by altering the criteria for such eligibility can implicate the ex post facto clause because eligibility for parole consideration is part of the law annexed to the crime when committed. ***Kaylor***, 912 S.W.2d at

18

732 (citing *Weaver*, 450 U.S. at 32–33, 101 S.Ct. at 966 (other citations omitted)). As the United States Supreme Court has stated:

> ... retroactive alteration of parole or early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the Ex Post Facto Clause because such credits are "one determinant of petitioner's prison term ... and ... [the petitioner's] effective sentence is altered once this determinant is changed."

*Lynce v. Mathis*, 519 U.S. 433, 445, 117 S.Ct. 891, 898 (1997) (citations omitted).

In the instant case, the analysis of any *ex post facto* implication of Mr. Phifer's claims must begin with Tenn.Code Ann. §§ 40–28–301 and –302, which were part of "the law annexed to the crime" which Mr. Phifer committed in 1979. By their plain words, those statutes put offenders on notice that if convicted of a Class X felony, their release classification status was to be determined by the Board in its discretion and that release on parole was not available if the Board found that such release would depreciate the seriousness of the crime committed or promote disrespect for the law.

*Phifer*, 2002 WL 31443204, *4–*5 (footnote omitted).  The same is true in Mr. Braden's case.  As noted by the trial court in its order:

> "Because at the time of [the petitioner's] crime and conviction, the law regarding parole. . . authorized denial if the Board found that parole would depreciate the seriousness of the crime committed," there is no *ex post facto* violation. . . .  Since the same seriousness of the offense standard existed in 1981 as in 2012, the law did not "change the punishment to the petitioner's disadvantage nor inflict a greater punishment than the law allowed when the offense occurred;" thus, there was no *ex post facto* violation.

In the absence of any equal protection, due process, or *ex post facto* violation, the "seriousness of the offense" criterion provides a legitimate legal basis for the Board's decision to deny Mr. Braden parole.  Accordingly, the trial court did not err in granting

19

summary judgment, as a matter of law, to the Appellees.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Andrew J. Braden, III. Because Mr. Braden is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

 

_____
KENNY W. ARMSTRONG, JUDGE